# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

STEVEN PINDER                                                                               PLAINTIFF
ADC #123397

v.                               2:20-cv-00047-DPM-JJV

GREGORY RECHCIGL,
Health Services Administrator,
East Arkansas Regional Unit, ADC, *et al.*                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS[1]

The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr.   Any party may serve and file written objections to this recommendation.   Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.   Mail your objections to:

---

[1] Pursuant to Plaintiff request, the Court is using a larger font to accommodate his visual impairment. (Doc. 15.)

1

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

**I.     INTRODUCTION**

Steven Pinder ("Plaintiff") is a prisoner in the Arkansas Division of Correction ("ADC") who has accumulated three strikes as defined by 28 U.S.C. § 1915(g). (Docs. 8, 16.) He has filed this *pro se* action alleging Defendant Practical Nurse Tracy L. Bennett violated his constitutional rights as protected by 42 U.S.C. § 1983 and committed medical malpractice as defined by Ark. Code Ann. § 16-114-201 to 213 when she failed to reorder his glaucoma medications in January 2020. (Doc. 12.) He also claims Defendants Health Services Administrators Gregory Rechcigl and Jason Kelley failed to take corrective action against Defendant Bennett.[2] (*Id.*)

On August 30, 2020, Defendants Bennett, Rechcigl, and Kelley filed a Motion for Partial Summary Judgment arguing the claims raised against them during certain time periods should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies. (Docs. 95, 96, 97.) Thereafter, the

---

[2] All other claims and Defendants in the Amended Complaint have been previously dismissed without prejudice. (Docs. 23, 114.)

Court clarified that Plaintiff's claims against Defendants were limited to the medical care rendered by Defendant Bennett in January 2020. (Docs. 99, 114.) Defendants Bennett, Rechcigl, and Kelley then filed a Supplemental Motion for Summary Judgment asserting that their prior Motion for Partial Summary Judgment was moot and asking that all claims against them be dismissed without prejudice due to a lack of exhaustion. (Docs. 109, 110.) Plaintiff has filed Responses to both Motions. (Docs. 102, 103, 104, 115.)

After carefully reviewing the pleadings and for the following reasons, I recommend Defendants' Motion for Partial Summary Judgment (Doc. 95) be DENIED as moot; Defendants' Supplemental Motion for Summary Judgment (Doc. 110) be GRANTED; Plaintiff's claims against Defendants Bennett, Rechcigl, and Kelley be DISMISSED without prejudice; and this case be CLOSED.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284

F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   ANALYSIS

#### A.   Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (the PLRA applies to actions brought under federal law). And, an analogous Arkansas statute adds that prisoners must "exhaust all available administrative remedies" before bringing a claim under the

Arkansas Civil Rights Act or "any other state law." *See* Ark. Code Ann. § 16-106-301(a). Thus, Plaintiff must have exhausted his available administrative remedies before bringing his § 1983 and pendent state claims.

To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock,* 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019); *King v. Iowa Dept. of Corr.*, 598 F.3d 1015, 1054 (8th Cir. 2010). Thus, whether an inmate has properly exhausted administrative remedies will depend on the specific requirements of the prison's grievance policy.

### B. The ADC's Grievance Policy

The ADC grievance policies in effect at the time of the alleged constitutional violations were Administrative Directives 14-16, 19-20, and 19-34. (Docs. 96-1, 96-2, 96-3.) Pursuant to these Directives, the first step is for an inmate to file an informal resolution with the designated problem solver within fifteen days of the incident. (*Id.*) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or

witnesses, and how the policy or incident affected the inmate submitting the form. (Docs. 96-1 at 5-6; 96-2 at 6; 96-2 at 7). Following an attempt at informal resolution, an inmate may proceed to step two by filing a formal grievance with the Health Services Administrator within three working days of receiving a response to the informal resolution. The HSA must provide a written response within twenty working days of receiving the formal grievance. An inmate may then proceed to step three by appealing, within five working days, to the ADC Deputy Director for Health and Correctional Programs. "A written decision or rejection of an appeal at this level is the end of the grievance process." (Docs. 96-1 at 12; 96-2 at 13; 96-3 at 14.) If ADC personnel are late in responding at step two or three, prisoners may proceed to the next step without a response. Finally, the Administrative Directives include the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedures *before* filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.

(Docs. 96-1 at 17; 96-2 at 19; 96-3 at 19) (emphasis added.)

### C. Plaintiff's Grievances

In their original Motion for Summary Judgment, Defendants stated Plaintiff filed thirty-four grievances since April 1, 2017, which is the first date of care mentioned in his Amended Complaint, and March 6, 2020, which is the date he filed

this action. (Doc. 12 at 10; Doc. 96-5.) In his Response, Plaintiff referred to several other grievances he believed to be relevant, which Defendants later provided in their Reply. (Docs. 104, 109). However, now that it is been clarified that the relevant date of care is January 2020, Defendants assert there are only three relevant grievances: EAM-20-74, EAM-20-233, and EAM-20-271. (Doc. 110.) My review of the record confirms that these are the only relevant grievances filed on or after January 2020.[3]

Nevertheless, these three grievances cannot be considered because Plaintiff obtained a final ruling on them *after* he commenced this lawsuit on March 6, 2020. (Doc. 96-4 at 134 to 148.) The law on this point is clear. "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original). Dismissal is mandatory if "exhaustion was not completed at the time of filing." *Id.; see also Booth v. Churner,* 532 U.S. 731, 733 (2001) (the

---

[3] In EAM-20-406, Plaintiff alleged Defendant Kelley and other individuals were refusing to renew his prescription for 800 mg of Ibuprofen for the treatment of pain and swelling. (Doc. 96-4 at 149 to 153.) Plaintiff did not say, as he does in his Amended Complaint, that Defendant Kelley played any role in the failure to renew his prescriptions for "Dorzolamide/Timolol (Cosopt) and Refresh PF Plus severe" for treatment of his glaucoma in January 2020. (Doc. 12 at 14.) Thus, this grievance is irrelevant. And, as will be explained herein, it cannot be considered because Plaintiff completed the exhaustion process as to EAM-20-406 *after* he filed this lawsuit.

7

PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not complete at the time of filing). And, the ADC's grievance policy reminds prisoners they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedures *before* filing a Section 1983 lawsuit." (Docs. 96-1 at 17; 96-2 at 19; 96-3 at 19) (emphasis added.)

The United States Supreme Court has emphasized complete and proper exhaustion is "mandatory," and that courts cannot consider the merits of a prisoner's claims until that hurdle has been cleared. *Jones,* 549 U.S. at 211. The only exception to the exhaustion requirement is if administrative remedies were "unavailable," such as when the prison grievance procedure is "so opaque that it becomes . . . incapable of use," or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 136 S. Ct. 1850, 1859-60 (2016). In his Response to Defendants' Motion for Partial Summary Judgment, Plaintiff said administrative remedies were unavailable to him because ADC administrators dismissed some of his grievances as being duplicative and wrongfully rejected others for not having the proper attachments. (Docs. 102, 103, 104.) However, Plaintiff did *not* renew any of these arguments as to the grievances he filed about his glaucoma medications in

January 2020. (Docs. 115.) As explained in my prior recommendation (Doc. 99), Plaintiff could have exhausted this claim in compliance with the ADC's procedure by: (1) filing and fully exhausting a grievance alleging Defendant Bennett failed to renew his glaucoma prescriptions in January 2020; (2) filing and fully exhausting a second grievance alleging Defendants Rechcigl and Kelley failed to take corrective action in response to his first grievance; and (3) filing a lawsuit *after* he had properly completed steps 1 and 2. Plaintiff has not presented any evidence or argument demonstrating he was prevented from using this available administrative remedy. Therefore, I conclude Defendants Bennett, Rechcigl, and Kelley are entitled to summary judgment, and I recommend the narrow corrective inaction claim Plaintiff has properly pled against them be dismissed without prejudice.

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Partial Summary Judgment (Doc. No. 95) be DENIED as moot.

2. Defendants' Supplemental Motion for Summary Judgment (Doc. 110) be GRANTED, Plaintiff's claims against Defendants Bennett, Rechcigl, and Kelley be DISMISSED without prejudice, and this case be CLOSED.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the

accompanying Judgment would not be taken in good faith.

DATED this 13th day of October 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE